Case number 19-3100 United States of America v. Francisco Cabajal Flores, also known as Delmata Appellants, Mr. Gilbert for the Appellant, Ms. Kirk for the Appellee. Good morning. Good morning. Counsel for Appellant. Hi, Mr. Gilbert, are you able to hear me? Apparently not. How about now, Your Honor? Good. Can you hear me? Yes, Your Honor. All right, would you like to proceed? Yes, Your Honor. Thank you. My name is Richard Gilbert. I have represented Mr. Cabajal Flores since he was presented in Washington, D.C. back in 2011. So it's a relationship that goes back some time. I have asked to reserve two minutes for rebuttal. Let me just start by saying that the original sin, if I can use that term, that gives rise to all of the legal issues in this case has to do with the government's insistence that Mr. Cabajal Flores plead guilty to the RICO conspiracy. Well, you're not raising any Rule 11 issue here, are you? No, Your Honor. So he pled guilty. And he pled guilty acknowledging the statement of facts presented by the government in support of the plea agreement. Yes, that's correct. I do think that it's important to keep in mind the language that appears in the stipulated statement of facts, particularly its use of the passive voice when it talks about things that were common knowledge or things that Mr. Cabajal Flores was aware of. I think both of those expressions are really expressions that are more applicable to the issue of foreseeability rather than his any specific agreement that he might have made. And over 25 years ago in the United States versus Saro, this court made it clear that foreseeability was not enough in determining responsibility after a general guilty verdict on conspiracy. And so we have suggested that there's actually no indication that Mr. Cabajal Flores actually agreed to have anything to do specifically with frauds. That's why we've suggested that his offense level should be the minimum of six based on the drug quantity table. Well, counsel, I mean, you know better than I, your client made certain admissions about what his role was all about. And it certainly had to do with this drug trade. Your Honor, to be precise, I don't think that he made those kinds of admissions. Why was he keeping the roots open? Why was he, you know, trying to disrupt competition? I mean, we can't just ignore what your client said. Well, I think we've tried to present in our brief that in carrying out the activities of the Zeta cartel, there was a wide variety of nefarious activities that the cartel engaged in. And drug trafficking was only one of them. I think it's, I think it's significant that the government and the pre-sentence report writer, and eventually the judge, included that Mr. Cabajal Flores, for his actions in the state of San Luis Potosi, was responsible for all of the drugs imported by the Zeta cartel during the pre-sentence. During the period of time that he was a member of the conspiracy. I've tried to provide, page 225 of our appendix, a map prepared by the DEA, as to the areas controlled by the various cartels in Mexico. And as you can see, the Zetas controlled the state of Nuevo Leon, which is right across the border from the city of Laredo. And also, the Zetas controlled a large share of Tamaulipas, the major city of which was Reynosa, which is right across the border from McAllen, Texas. So, drugs would have entered the United States, not necessarily having anything to do with San Luis Potosi, which is where Mr. Cabajal Flores was conducting activities for the Zetas. Mr. Gilbert, I'm interested in your arguments about vacating the guilty plea under section 1114. Why can't Mr. Flores raise those issues on collateral appeal? Why isn't that the appropriate way to raise those issues? Well, we would certainly, of course, like this court to consider it, because we think that if you force him to go through collateral appeal, the case may not get resolved before he's released. Because there's nothing to expedite a 2255 motion. And can you say some more about why you think that this is plain error under Rule 52B? Yes, Your Honor. After Garcia Soto, in this circuit, the law is that a violation of section 1114 is not a crime punishable under United States law because of an extraterritorial application. So, that's the law in this circuit. Has re-hearing and bank been decided in the Garcia Soto case? Yes, Your Honor. Our research indicates that the government did file a petition for re-hearing, and this court denied it. Okay, thanks. So, I think that's established law now in this circuit. And so, after the Supreme Court's Henderson decision, what's determined to be plain is what's plain at the time of the appeal. So, he's appealing now, and the law in this circuit is that those two convictions under 1114 are not punishable under United States law. So, that's the error, and that's the law now. That's why we say it's plain. But the government says if he hadn't pled guilty to 1114, and we couldn't charge him with that because it didn't have extraterritorial reach, we would have charged him with 1116. And under the sentencing guidelines, he would have gotten exactly the same score as he got under 1114. What's your answer to that? Well, of course, the protected person, which is the 1116, only applied to the agent that survived, Special Agent Avima, because he had diplomatic status. It did not apply to Special Agent Zapata. So what? There would be no basis to convict my client of accessory to the fact of murder. It would only have been the attempted murder. So the sentence would not have been the same in any event because of the way that you view multiple charges. It all depends on what you decide the correct sentencing guideline for the RICO conspiracy is. Because if you agree with the pre-sentence report, then the sentencing guidelines for the other two convictions are irrelevant because the sentencing guideline of 50, reduced down to 43, is much, much higher than the 30 and 29, which would be the levels for the murder, accessory to the murder, and accessory to the attempted murder. Did you say in your brief that vacating the sentences under 1114 would not amount to anything because they were concurrent? No, I did not make that specific point in our original brief. I am trying to reserve some time for rebuttal. All right. If my colleagues have no further questions, we'll hear from the government. Good morning. May it please the court, this is Suzanne Kurt on behalf of the United States. Unless the court asks otherwise, I'd like to proceed with the issue of drug quantity. And I would like to first talk about the defendant's objections to that. Number one, he claims that he's being responsible for the drugs attributable to the entire cartel. That is not correct. Number two, he said he had no role in transporting drugs. That also is not correct. And number three, he claims that he had nothing to do with the involvement of methamphetamine, but that is not relevant. Turning first to the drug quantity. As Judge Rogers noted in his statement of fact, appellant acknowledged that the Los Atis cartel transported, and the word is multi-ton quantities of cocaine every single month to the United States. Now when the court decided drug quantity in this particular case, it adopted level 38. For a level 38, you begin with 450 kilograms, or which is only one half of a ton. In the pre-sentence report, which the court adopted, the court stated that the minimum level that he was responsible for was one ton. Basing on the notion that multi-tons were transported each month. I think I inadvertently overstated my burden or the government's burden of proof here because when the judge adopted the pre-sentence report, he was really adopting the notion that it was one ton that they were responsible for. I didn't realize until reviewing for the moot that the pre-sentence report writer did not times that by the 15 months that the defendant participated in the cartel. So he is not being held responsible for multi, multi-tons of cocaine. He is only being held responsible for 907 kilograms, which is one ton, which is well above the amount required for level 38. Secondly, appellant argues that he should be responsible for only a level six, but that is an incorrect application of the guidelines. He pled to an offense of five kilograms or more. And the guidelines require you to begin with what is the offense level applicable to the offense of conviction. That is at least a level 30. And then in terms of his own involvement, there, as Judge Rogers indicated, there are numerous, numerous circumstances set forth in the Statement of Facts, stating that his role was to protect the cartel's drug smuggling routes into the United States. That was his purpose in getting hired by the Los Zetas cartel. That included in the appendix at page 45, protecting the drug smuggling routes in San Luis Potosi State, as well as others. And he specifically acknowledged that San Luis Potosi State had lucrative drug trafficking routes into the United States. He acknowledged numerous times that his role was to eliminate competition for land drug routes. He stated that when he started working for the cartel, he gathered information on rival cartels competing for the drug routes. That would be in the state where he worked. Then he worked his way up to be a commander. And at that time, he still, his role was still to protect the lucrative highways in San Luis Potosi for those drug trafficking routes. And we have cited to the case, to the court on page 36, page 39 of our brief, several cases from the Third, Fourth, First, and Seventh Circuit that talk about the important role of an enforcer, such as this appellant was, and why it is appropriate to contribute to him the, although that didn't happen in this case, all of the drugs that were transported by the cartel. Appellant relies on CERO, but in CERO, the court was concerned with two appellants and whether each was, had joined in the entire conspiracy and whether each was responsible for the amount of drugs that the other person had engaged in. But at the same time, the court recognized that in some conspiracies, each defendant has joined in the overall scheme. So the scope is identical for each, and that is the type of conspiracy that we have here. This man's role was to protect the routes for the entire drug cartel that was going through San Luis Potosi. I'd like to, unless there are no further questions about drug quantity, I would like to turn my attention to Judge Ralph's question about the first issue. And appellant has ignored the fact that he did not, this claim about 1114 was available to him when he brought his direct appeal. He doesn't claim otherwise. And this court has said in numerous occasions, and we've cited Henry, Bruce, and Sonny, that it's well settled that when an argument has been raised in an initial appeal, it's inappropriate to consider that argument on the second appeal following agreement, which is what we have here. Appellant, as Judge Ralph asked about it. Could I just explore so I understand precisely? I know you reject his argument about forfeiture as opposed to waiver. Yes. But what was his situation? In other words, the direct appeal was filed when? The direct appeal was filed. I'm not sure of the exact date. What I'm trying to get at is when he filed his direct appeal, had this court already decided that section 114, 114. No, no, no. So. I want to be clear. There's a Supreme Court decision written by Justice O'Connor talking about what a defendant is obligated to raise where there is no definitive decision on the issue, but it's percolating, as it were. Yes. What? Yes. Do you want me to address that? Well, I want to be clear. Is that the argument you're making as to the direct appeal? Yes, our argument is in the direct appeal, he's making, in Garcia Soto, the argument was that 1114 did not apply extraterritorially. Those sorts of claims have been for all kinds of statutes where the conduct occurs outside the United States. There are cases replete with those kinds of arguments. That was definitely an argument that was available to him. And as the court knows, in Boosley, the court discussed that where those types of arguments are circulating, that it's not an excuse that you didn't bring it. The earlier in the direct appeal was definitely available to him. And as a matter of fact, he made a guidelines argument that was very similar. He made a guidelines argument that he wasn't responsible for the conduct that occurred in Mexico as relevant conduct. My other point, though, that I wanted to bring out in terms of the plain error claim, and we believe this claim is absolutely waived. He relies on this court's decision in Sani and a quote there where they're talking about the plain error doctrine applying, but he misread Sani. That quote from Sani, the court there is talking about the fact that the defendant did not raise a claim about the resentencing. And so, yes, that would be plain error. But if you look at the sentence immediately before that, the court in Sani addresses the defendant's attempt to raise a claim about his sentence that should have been raised in the first appeal, and the court in Sani applies Bryce, which in turn applies Henry, that says it must be raised, is forfeited, is waived if it's not raised in the direct appeal. And, of course, that would Counsel, could I just be clear on what the government's position is? In other words, if an issue about the extraterritorial application of various US code provisions is circulating, even though the Supreme Court has said that counsel has to make determinations as to what issues to bring, and if you've got 40 to bring adding the 41st doesn't necessarily, or the failure to add it doesn't necessarily show an effective assistance of counsel. So, I want to understand why, where there's nothing in the way of an overt waiver, except through this legal theory, would the government take the position that it wants an appellant to raise everything that may be percolating out there, even though in the relevant jurisdiction, there's been no decision, and no decision by the Supreme Court. So then the appellant court, us, is supposed to apply the law as it exists at the time we're deciding the case, absent this retroactivity concern. So, it's not as though, I'm just trying to understand, is the failure to say, and I raise everything else that may be percolating out there, deemed to be a waiver by the government, as opposed to what appellant is arguing that it should be viewed as a forfeiture. No, we are arguing that it's a waiver, Your Honor, because the argument was definitely available to him. I know that in other jurisdictions. Counsel, can you just take my question as I gave it to you because that's a critical point to me, not what other jurisdictions are doing, but what the government in this case is arguing he was required to do in order to avoid this waiver argument, which is a slightly new concept of waiver after Olano, and even after Jackson versus Deno. So, I'm just interested in it. No, Your Honor, we firmly believe that he waived it. The argument was definitely available to him at the time of the direct appeal. There were contrary decisions in other jurisdictions, but that, I think, I also think Boosley makes it very clear that it was his obligation to raise it at the time of the direct appeal. Moreover, though, what's also involved in that is this was a guilty plea. So, as Boosley makes plain in order to, you know, the arguments that the court's talking about may be pertinent to a direct appeal and an appeal after conviction, but not for a guilty plea. A whole other set of concerns come in with a guilty plea, as Boosley makes clear and as we explained in our brief. So, it's not plain error. It's waived. We believe the law is very clear on that, that this type of claim was definitely available to counsel, and therefore it has to be brought in a habeas action in the district court. I'm sorry, just from what you just said just now, do you think, is your waiver argument based in part on the fact that those arguments are percolating and also that he pled guilty? So, is your contention also that the guilty plea waived these claims in some way? Your Honor, I have to be frank. When I first looked at this particular issue, the first thing that popped into my mind was the waiver argument because it had not been raised in the direct appeal. As we were preparing for this argument and I was working on my moots last week, I was looking at a jurisdictional issue, reading some other cases, and I came across a case called Delgado Garcia, which brought up that particular argument that you just mentioned, that the guilty plea waives it. I discussed it with my colleagues, and unfortunately, I think it's a slightly different waiver argument that we made in our brief, and to be frank with you, we did not think that it was an appropriate issue to raise in a Rule 28 letter. But it certainly is in Boozley, but we think that the issue of waiver by failure to raise it in the first appeal is very clear based on this court's particular precedence and the fact that these types of arguments are very common in the jurisprudence, that a particular U.S. statute doesn't govern extraterritorially. So therefore, this needs to be brought in the habeas context. My question was different. I wasn't talking about a specific provision of the U.S. Code. I was talking about is the government's argument that you have to raise any of these U.S. Code provisions that might apply to me for conduct taking place outside of the territorial United States has to be raised. So then I would just list all the code sections that the government is applying to me. Oh, no, Your Honor. Our position is that with respect to the 1114 claim that he's making now, that that had to be raised in the direct appeal, that specific claim. Because? Because that type of claim was definitely available to him at the time of the direct appeal, and it would have been directly relevant to his claim in the direct appeal, assuming that he could raise it, given the fact that it was a guilty plea, as Judge Brown mentioned. May I ask you? Yes, Your Honor. The brief says that because it's a guilty plea, and I asked counsel for the defendant, that you have to consider what other charges could have been brought if there is a problem with what we have here, which is 1114. And you say, yes, 1116, right? Yes. Okay. But how many counts could you get out of the 1116? Just one, right? Right. That's right. But we will. And so he's been convicted of two felonies, or he pled guilty to two other felonies. To replace it with only one felony runs into a problem. And the problem is the $100 assessment. I'm not sure, Your Honor, what... For each felony count, the law requires that the defendant be assessed $100. So you can't say, well, there's no consequence here, because the sentence would be, the imprisonment sentence, yes, would be the same, but the $100 assessment would not. Well, Your Honor, I think the point you raised, these are the types of issues that should be raised in the district court in the first instance. And I would point out that we also, that the use of a firearm during a drug trafficking crime, we also forewent that. He was charged with that in the initial indictment. And that is, that, we believe, sentence would have to be consecutive even. So I think that that, and of course, he has to show that he's not guilty of all more serious charges. And of course, he's not, he can't make that with respect to the RICO conspiracy either. So I don't think he, he can't meet the burden that this court discussed in Casso and Baxter of showing he's not guilty of either equally serious charges or greater charges. And that's our position as a court in our brief. Okay, good. Okay. Thank you. Thank you, Your Honor. Are there further questions regarding the other enhancements that the court may have? Otherwise, we would submit on our brief. Thank you, counsel. Thank you, Your Honor. Counsel Flora Pillen. Thank you, Your Honor. This court in the United States versus Dudley set out the responsibilities of the district court and arguably those of the prosecutor as to being able to make specific findings as to the scope of the agreement. And I respectfully suggest that simply knowing as a general matter that drugs might be coming through San Luis Potosi headed towards the border does not mean that he's specifically agreeing to all of those drugs that come through San Luis Potosi. I think there's got to be some specific findings made and none of those findings have to do with any specific quantities of drugs. I've addressed in our brief the government's arguments about the enforcer being responsible, but those are cases in which the enforcer was working directly with the head of the drug trafficking organization. That's clearly not the case here where Mr. Flora said best that he said to be a peripheral enforcer by trying to keep the Gulf cartel off the roads in San Luis Potosi. I do want to argue, I addressed it in my brief, the issue of whether or not the forfeiture argument is waived by virtue of the guilty plea. And I cite the case United States versus class that I cite in my brief and it talks about basically the principle that, look, if the argument that you're making about a charge you pled guilty to doesn't involve new facts, we're not arguing that it does, because it's undisputed that the attack on the agents occurred outside the United States of America. I believe that this is a case where under class the defendant is entitled, notwithstanding the guilty plea, to challenge the validity of those convictions. I didn't have a chance to tell you why the fact that Mr. Carbajal Flores had no personal involvement or knowledge of the methamphetamine is not relevant because there was an increase in the sentencing guideline precisely for the methamphetamine. So unless there's additional questions, that's all that I have. I just want to be sure I have your citation. How do you spell U.S. versus, is it class or glass? Class, just like an online class. C-L-A-S-S? Correct, Your Honor. Let me find that for you. Yeah, it's not in your reply brief. No, it was, I was trying, when I raised it in my initial brief, I was trying to anticipate arguments that I thought the government would raise later. And certainly the idea that he pled guilty is one of those arguments I was trying to anticipate. Well, I don't see it in your opening brief either. I'm looking desperately right now, Your Honor. Okay, what is the citation? That's what I'm looking for. I'm sorry. It's 138 Supreme Court 798, a 2018 decision. Class, the United States. Thank you. So my point really is not that the case didn't necessarily exist, but that the government had no opportunity to respond. Well, the government in its reply brief did not raise the issue of Mr. Carvajal Flores being precluded from asking this court to consider the forfeiture argument. They didn't argue that the guilty plea in and of itself precluded him from raising the plain error issue. I believe, Judge Rodgers, you have it right that forfeiture is simply the failure to raise an issue, but waiver requires a more intentional forbearing of an argument. And I don't believe there's any case law that argues that simply because I conceivably could have made an argument that was not yet the law in this circuit, that therefore that's a waiver and not a forfeiture. Well, a counsel acknowledged the earlier points you were making, but comes back and says Boosley, and you say Boosley is inapplicable here. Well, I think what makes Boosley inapplicable is in Caso, this court tried to divine what the Supreme Court had in mind in Boosley and concluded that the requirement to prove innocence on all the other more serious charges was either a matter of the inherent in plea bargaining or was designed to avoid the defendant getting a windfall. And eventually that's what this court settled on in Baxter was the rationale behind Boosley. But in this case, depending on how you resolve the sentencing guideline issues, the government forced him to plead guilty to an offense that if the government's calculations are correct, carried a life sentence and carried a guideline sentence of life, which is what 43 is. And so certainly that was a, they got that plea as a result of the plea bargain. So that's a more serious offense and they were able to extract that from him. So that's why I think Boosley is not inapplicable. Because they were able as a result of plea bargaining to get him to plead to a much more serious offense than the ones that we're asking for today. All right. Do my colleagues have any questions? No. Thank you, counsel. We'll take the case under advisement. Thank you, Your Honor.
judges: Rogers, Rao, Randolph